IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWIGHT SEXTON,<br>**Plaintiff**<br><br>v.<br><br>**GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF INMAR ENTERPRISES, INC., and RELIANCE STANDARD LIFE INSURANCE COMPANY,**<br>**Defendants** | : : : : : : : : : : : : | No. 3:04cv2475<br><br>(Judge Munley) |

# MEMORANDUM

Before the court for disposition is the defendants' motion for summary judgment in this action seeking long term disability benefits under a group insurance plan. Plaintiff is Dwight Sexton a former employee of Inmar Enterprises. The defendants are Group Long Term Disability Plan for Employees of Inmar Enterprises, Inc., and Reliance Standard Life Insurance Company ("Reliance"). The matter has been fully briefed and is ripe for disposition.

**Background**

Inmar Enterprises hired plaintiff on June 12, 1995 (R. 138).[1] Several years later he became disabled from working due to a back injury. At the time of the onset of his disability, he served as an Assistant Manager of Sorting, Packing, Shipping and Receiving. (R. 221). He stopped working on March 5, 2001. (R. 140, 221).

Plaintiff applied for, and initially received, long-term disability benefits under the Group Long Term Disability Plan for Employees of Inmar Enterprises, Inc. (hereinafter "Plan"). Reliance, the insurer and the administrator of the Plan, awarded benefits on July 26, 2001. (R. 67). Approximately two years later, on

---

[1]We will cite the administrative record as "R. page number."

October 15, 2003, Reliance informed plaintiff that he no longer met the policy definition of "Total Disability" and terminated his benefits. (R. 30). On November 13, 2003, plaintiff appealed the termination of benefits. (R. 15). Reliance reviewed the documentation and concluded that continued benefits were not warranted. (R. 6).

Plaintiff also received Social Security Disability Benefits. Under the Reliance policy, it is entitled to reduce the benefit amount it pays to the claimant by the amount paid in Social Security benefits. (R. 111). Reliance asserts that based upon the Social Security benefits paid, it - Reliance- overpaid the plaintiff by $19,064.00. (R. 4).

Plaintiff filed the instant case under the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1001, et seq.. He seeks to have the court order defendants to pay all benefits due under the Plan from October 15, 2003 to the present, plus attorney fees. (Doc. 1, Compl.) The defendants filed a counterclaim for the $19,064.00 that they assert they overpaid. (Doc. 3, Answer/Counterclaim). After the close of discovery, defendants filed the instant motion for summary judgment. Although, plaintiff did not file a motion for summary judgment, in his brief he asks for judgment in his favor and against the defendants. (Plaintiff's Brief, Doc. 12 at 10). Accordingly, we will treat the case as if cross-motions for summary judgment were filed.

**Jurisdiction**

It is undisputed that this case arises under a federal statute, ERISA. Thus, we have jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

The standard of review for an action brought for review of a denial of disability benefits under ERISA is not set forth in the statute. The United States Supreme Court has held that courts should ordinarily apply a *de novo* standard of review in assessing a plan administrator's denial of ERISA benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where the ERISA plan commits discretion to the plan administrator, however, the reviewing court applies an arbitrary and capricious standard. Skretvedt v. E.I. DuPont de Nemours and Co., 268 F.3d 167, 173 (3d Cir. 2001). Under the "arbitrary and capricious" standard, a reviewing court must defer to the plan administrator unless its decision was without reason, unsupported by substantial evidence, or erroneous as a matter of law. Id. at 173-4.

Where the plan administrator is a acting under a conflict of interest, that conflict of interest must be weighed as a factor in determining if its decision is arbitrary and capricious. Firestone, 489 U.S. at 115. The Third Circuit Court of Appeals has identified two instances where a special danger of conflict of interest warrants the application of a "heightened arbitrary and capricious" standard of review. These two instances are: 1) where the pension plan is unfunded, in other words, where the employer funds the pension plan on a claim-by-claim basis as opposed to the employer making fixed contributions to the pension fund; and 2) where the plan is administered by an entity outside of the employing company, for example, an insurance company, that does not have strong incentives to keep employees satisfied by granting meritorious claims. Skretvedt, 268 F.3d at 174 (citing Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 388 (3d Cir. 2000)).

With regard to the second scenario, the Third Circuit has more particularly determined that it is appropriate to utilize a heightened standard of arbitrary and

4

capricious review when an insurance company both determines eligibility for benefits and pays those benefits from its own funds.  Pinto, 214 F.3d at 383, 387.  The court's reasoning is that there is a strong incentive for the insurance company to deny benefits when the fund from which benefits will be paid is the same fund from which the insurance company receives its profits.  Id. at 378. [2]

In the instant case, the arbitrary and capricious standard of review is used because the plan administrator has discretion to interpret the terms of the Plan and to determine eligibility for and entitlement to, plan benefits.  R. 107 ("The claim review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.")   In addition, the plan administrator is the defendant insurance company; therefore, the special danger

---

[2] In such cases, courts are to utilize a "sliding scale" approach, according different degrees of deference depending on the apparent seriousness of the conflict.  Id. at 391.  The court explained that the arbitrary and capricious standard is a range, not a point.  The standard becomes more penetrating the greater the suspicion of partiality and less penetrating the smaller that suspicion is.  Id. at 392-3.  The greater the evidence of conflict, on the part of the plan administrator, the less deferential the court should be.  Id. at 393.

Each case must be examined on its own facts when the sliding scale approach is used.  Relevant factors that can be taken into account include, *inter alia*, the sophistication of the parties, the information accessible to the parties, and the exact financial arrangement between the insurer and the employer.  Id. at 392.  The Pinto court found the following procedural anomalies to be relevant in that case and enough to place the level of review at the far end of the arbitrary and capricious range: the plan administrator treated the same facts inconsistently by reversing its own initial determination of total disability; selective, self-serving, use of a doctor's expertise; and rejecting the recommendation of a staff worker that the claimant be reestablished pending further testing.  The parties have not submitted sufficient evidence for us to determine whether the "sliding scale" approach should be used in the instant case. Nonetheless, as set forth below, we find that the defendants' denial of benefits does not withstand the heightened arbitrary and capricious standard.

of conflict of interest warrants the use of the heightened arbitrary and capricious standard.  Id. ("Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan.") Accordingly, we will review this case under a heightened arbitrary and capricious standard.

**Discussion**

As set forth above, this case involves plaintiff's original complaint and the defendants' counterclaim.  We will discuss each separately.

**I. Plaintiff's Complaint**

Defendant contends that summary judgment is appropriate in its favor on plaintiff's complaint because an Independent Medical Examination indicates that the plaintiff can do light work.  His job with Inmar involved only light work.  Therefore, he is not disabled from performing his job.  Plaintiff's position is that he cannot perform heavy lifting.  His job calls for heavy lifting therefore, he is disabled.  Moreover, plaintiff asserts that the defendant cannot raise more issue now to deny coverage than it did originally to deny them.  After a careful review, we agree with the plaintiff.

The policy provides that "We will pay a Monthly Benefit if an Insured. . . is Totally Disabled as the result of Sickness or Injury covered by this Policy" (R. 111).  "'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or Sickness, during the Elimination Period and thereafter and cannot perform the material duties of his/her regular occupation." (R. 103).  An insured's "regular occupation" is "the usual work that the insured is **actually performing** immediately before the onset of disability." Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 386 (3d. 2003) (emphasis added).

The defendants' denial of benefits is premised on their finding that

6

plaintiff's "regular occupation" does not include medium or heavy lifting. In fact, in its brief, the defendant states: "Reliance Standard does not dispute that *if* Mr. Sexton's occupation involved heavy lifting, he would be totally disabled. . ." (Reply Brief, Doc. 13 at 2 (emphasis in original)). Additionally, defendant "does not dispute that plaintiff cannot perform heavy lifting." Id. at 6.

According to the initial denial letter defendant sent to the plaintiff, benefits were denied because they deemed him to be employed in a "light activity level occupation" that did not involve heavy lifting. (R. 28 - 31). Initially, the employer described plaintiff's position as a "Manager of Shipping and Receiving." The employer noted that this occupation requires heavy physical activity, including frequently lifting, carrying, pushing and pulling up to fifty pounds and occasionally lifting, carrying, pushing and pulling seventy-five pounds. (R. 29). Subsequently, according to the denial letter, the employer advised the defendant that plaintiff's occupation did not, in fact, require him to lift, carry, push or pull fifty to seventy-five pounds. Id.

Because the defendants believed that they had inconsistent information from the employer regarding the plaintiff's occupation, they relied upon the United States Department of Labor's "Dictionary of Occupational Titles" in order to determine the physical requirements of plaintiff's job. This publication defines the occupation of "Manager of Shipping/Receiving" as a light activity level occupation. Id.  An Independent Medical Examination performed by Dr. Epstein indicated that plaintiff can perform light level activities.   (R. 30). Accordingly, defendant concluded that plaintiff no longer meets the policy definition of total disability.

Plaintiff appealed this denial of benefits and again the defendant determined that he could perform his occupation, which they termed "Light

7

exertion level." (R. 3).   The defendants noted that while the employer indicated that plaintiff was required to lift up to seventy-five pounds, when they review the claim for benefits, they do not, necessarily, consider his specific job at Inmar, but rather the occupation as it exists in the general labor market.  (R. 3 - 4).

The defendant's explanation of the denial of benefits and its basis for determining that plaintiff's position is a "light exertion" is in conflict with the Third Circuit Court of Appeals decision in <u>Lasser v. Reliance Standard Life Ins. Co.</u>, 344 F.3d 381, 386 (3d. 2003).   Defendant determined that the plaintiff's occupation involved "light exertion" based upon reference to the Dictionary of Occupational Titles definition of how the occupation exists in the general labor market.  In <u>Lasser</u>, the Third Circuit held that an employee's "regular occupation" is the usual work that the insured is actually performing immediately before the onset of disability."  <u>Lasser v. Reliance Standard Life Ins. Co.</u>, 344 F.3d 381, 386 (3d. 2003).   In that case, where the defendant insurer was also Reliance, the court found it unreasonable for the insurer to rely on the generic definition of the occupation at issue rather than the particular duties that the plaintiff actually performed.  <u>Id.</u> at 387.

Instead of determining the actual duties plaintiff performed, Reliance based its denial of benefits on the occupation as it exists in the general labor market. Accordingly, the decision to deny benefits is based upon inappropriate grounds, and is erroneous as a matter of law.   The denial of benefits is thus arbitrary and capricious.  <u>See</u> <u>Skretvedt</u>, 268 F.3d at 173-4.

The reason provided by Reliance for its denial of benefits to the plaintiff is that the evidence established that he could, in fact, perform the material duties of his regular occupation.  This conclusion is found in both the initial denial and the reconsideration denial. (R. 28 - 31, R. 1-4).  This reason is the sole basis

8

provided at the time of denial for the denial of the plaintiff's claim.  In their briefs, the defendants attempt to justify their denial on the basis that the occupation in fact only entailed light exertional work.  This ground was not relied upon in the denials, therefore, it is inappropriate for the defendant to argue it now.  See Glista v. UnumLife Ins. Co. Of America, 378 F.3d 113 (1st Cir. 2004).  See also Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999) (explaining that in reviewing a denial of benefits under an employee welfare plan subject to ERISA, a court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales.)

     Even if we were to consider this basis for denying the benefits we would nonetheless conclude that the decision is arbitrary and capricious as it is not supported by substantial evidence.  In fact, the evidence in the administrative record reveals that the job entailed heavy lifting.  The Occupational Analysis completed by the employer for Defendant Reliance on April 26, 2001, indicates that occasionally plaintiff is required to push, pull and/or lift/carry seventy-five pounds.  (R. 221).  In August of 2003, the employer confirmed to the defendants that plaintiff's job as manager does involve heavy lifting.  The employer indicated that plaintiff's position requires him to supervise forklift operators and line loaders who are required to lift seventy-five pounds or more.  He is responsible for ensuring that all work moves along and if it is not moving along, to assign someone to get it moving along.  If no one is available, he must step in and perform forklift operator and line loader duties.   (R. 147).  The employer could not specifically state how often the plaintiff would have to perform such duties, including the lifting.  She stated, that it "could be regularly or not at all." (Id.).  It

9

is dependent upon the project demands, staff availability etc. (Id.).[3]

Instead of acknowledging that the employer indeed indicates that heavy lifting is a substantial part of the plaintiff's position, the defendant emphasizes portions of the record that indicate that the plaintiff does not continuously lift heavy weight during his work. The fact remains, however, that such heavy lifting is a part of the job even though there is no set amount of time when he performs such work. The record, therefore, does not support a conclusion that the job involves merely light exertion.

Moreover, the record reveals that heavy lifting is a part of the job. Defendant admits that plaintiff is totally disabled if his job involves heavy lifting (Reply Brief, Doc. 13 at 2, 6). Therefore, judgment in favor of the plaintiff is appropriate.

**II. Defendant's counterclaim**

In defendant's counterclaim, Reliance seeks $19,064.00, which it claims is the amount of benefits that it has overpaid plaintiff as the result of a Social Security off-set. Plaintiff does not respond to Reliance's motion for summary judgment on its counterclaim, therefore, we will grant judgment to defendant on the counterclaim. See L.R. 7.6 (explaining that a party who fails to file a brief in opposition to a motion will be deemed not to opposes such motion).

---

[3] The employer provided this information through a human resources representative, April McCoy. Evidently, the human resource representative who originally filled out the "Occupational Analysis" was no longer with the employer in 2003 when these new job descriptions were provided. See R. 147. It can be assumed that the representative there at the time plaintiff left his employment would have had more familiarity with plaintiff's job duties. McCoy notes that the prior human services representative may have filled out the form to indicate plaintiff was lifting seventy-five pounds because of the project that they were assigned. (R. 147).

10

**Conclusion**

    For the foregoing reasons, we will grant summary judgment to the plaintiff on the original complaint and to the defendants on the counterclaim.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DWIGHT SEXTON,** : | No. 3:04cv2475 |
| **Plaintiff** : | |
| : | (Judge Munley) |
| v. : | |
| : | |
| **GROUP LONG TERM DISABILITY** : | |
| **PLAN FOR EMPLOYEES OF** : | |
| **INMAR ENTERPRISES, INC., and** : | |
| **RELIANCE STANDARD LIFE** : | |
| **INSURANCE COMPANY,** : | |
| **Defendants** : | |

## ORDER

    **AND NOW**, to wit, this 7th day of March 2006, the defendants' motion for summary judgment (Doc. 9) is hereby **DENIED** with respect to plaintiff's complaint and judgment is **GRANTED** in favor of the plaintiff.  Defendant is ordered to provide disability benefits to the plaintiff from the date of the last payment.  Summary judgment is **GRANTED** as unopposed to the defendants on its counterclaim.  Defendants may offset the amount they owe plaintiff by the $19,064.00 awarded on the counterclaim.  The Clerk of Court is directed to close this case.

                                          BY THE COURT:

                                          s/ James M. Munley
                                          JUDGE JAMES M. MUNLEY
                                          United States District Court